AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.3:26-mj-70946 MAG |
| | ) | |
| | ) | |
| Bilal Ben Abdallah Islam Charles | ) | |
| | ) | |
| *Defendant(s)* | | |

<div style="border:1px solid;">

**FILED**

Jul 10 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

</div>

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____June 28-30, 2026_____ in the county of ___San Francisco & Alameda___ in the

___Northern___ District of _____California_____ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. 1029(a)(5) | Access Device Fraud |
| | |
| | MAXIMUM PENALTIES:<br>NMT 15 years imprisonment, NMT 3 years supervised release,<br>NMT $250,000 fine or twice gross gain/loss<br>potential forfeiture, potential restitution, potential removal from U.S. |

This criminal complaint is based on these facts:

See attached affidavit of IRS-CI Jesse Bumanlag

☑ Continued on the attached sheet.

Approved as to form _____
AUSA Bhagat

/s/ Jesse Bumanlag
*Complainant's signature*

Jesse Bumanlag, Special Agent, IRS-CI
*Printed name and title*

Sworn to before me by telephone.

Date:   07/10/2026

*Judge's signature*

City and state:   San Francisco, CA

Hon. Peter H. Kang, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT

I, Jesse Bumanlag, a Special Agent of Internal Revenue Service – Criminal Investigation (IRS-CI), being duly sworn, hereby declare as follows:

### INTRODUCTION

1. I make this affidavit in support of an application under Rules 3, 4, and 4.1 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant charging **Bilal Ben Abdallah Islam CHARLES** (**CHARLES**) with access device fraud in violation of 18 U.S.C. § 1029(a)(5).

### SOURCES OF INFORMATION

2. This affidavit is submitted for the limited purpose of securing a criminal complaint and arrest warrant. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that violations of the federal law identified above have occurred.

3. I have based my statements in this affidavit on my training and experience, personal knowledge of the facts and circumstances obtained through my participation in this investigation, information provided by other agents, law enforcement officers, and Secret Service employees, information provided by reports of other law enforcement officers, information provided by video and photographic evidence, and information provided by records and databases. I believe these sources to be reliable. Where I refer to conversations and events, I often refer to them in substance and in relevant part rather than in their entirety or verbatim. This affidavit also reflects my current understanding of facts relating to this investigation, but my understanding may change in the future as the investigation proceeds. My experience and training as an IRS-CI Special Agent and my participation in this investigation form the basis of the opinions and conclusions set forth below.

1

**AFFIANT BACKGROUND**

4.      I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations of, to execute search warrants based upon, and to make arrests for violations of federal law.

5.      I am a Special Agent with Internal Revenue Service – Criminal Investigation (IRS-CI) and have been so employed since 2021.  I am currently assigned to the Oakland Field Office.  My professional and academic training includes approximately 26 weeks of training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia.  This training included the Criminal Investigator Training Program (CITP) and a Special Agent Basic Training (SABT) course specifically related to IRS-CI.  SABT included courses in financial investigative techniques, legal principles, and statutes representing criminal violations of the United States Code as enumerated in Titles 18, 26, and 31.

6.      I also have training and experience specifically related to the investigation of cybercrime and cryptocurrency.  As a Special Agent, I have conducted criminal investigations involving the use of the Internet and cryptocurrency and requiring the tracing of cryptocurrency transactions.

7.      I hold a Bachelor's Degree in Computer Engineering and a Master's Degree in Telecommunications.  During my career, I have also obtained several cybersecurity and cryptocurrency related certifications, including Certified Information Systems Security Professional, Chainalysis Investigations Specialist Certification, and TRM Labs Advanced Crypto Investigator.

8.      I have conducted numerous investigations involving alleged violations of the Internal Revenue Code, money laundering statues, identity theft, and related offenses. I have also participated in numerous interviews of witnesses.

**APPLICABLE STATUTES**

9.      Title 18, United States Code, Section 1029(a)(5) makes it a crime to knowingly and with intent to defraud effect transactions, using one or more access devices issued to another

person or persons, to receive payment or any other thing of value during any one-year period the aggregate value of which is equal to or greater than $1,000.

10.     Under Title 18, United States Code, Section 1029(e)(1), an "access device" includes, among other things, telecommunications equipment that can be used to obtain money, goods services, or any other thing of value, or that can be used to initiate a transfer of funds.

**STATEMENT OF PROBABLE CAUSE**

<u>iPhone Theft in San Francisco and Unauthorized Financial Activity</u>

11.     From reports filed by the victim as well as subsequent interviews of the victim, I know the following.  On June 28, 2026, at approximately 2:15 a.m., an individual (VICTIM-1) was exiting a nightclub in San Francisco, California.  As VICTIM-1 exited the nightclub, he recognized an acquaintance outside and began speaking with her.  While in conversation with the acquaintance, VICTIM-1 was approached by two individuals who also proceeded to engage him in conversation.  During that interaction, one of the two individuals shared his Instagram account handle as ACCOUNT-1.

12.     Immediately following the departure of these two individuals, VICTIM-1 realized his Apple iPhone, which was in an unlocked state, was missing.

13.     VICTIM-1 returned to his San Francisco residence at approximately 4:00 a.m. and attempted to use Apple's Find My application to locate and disable the stolen device.  Upon attempting this, VICTIM-1 discovered the device had been removed from the Find My application so that he could not locate or disable the device.

14.     Based on my training and experience, and that of agents and analysts involved in this investigation, I know that mobile devices are the primary method used for multi-factor authentication (sometimes called "two-factor authentication"). Multi-factor authentication (MFA) is a security measure that requires a user to provide two or more independent forms of authentication, such as a password and a one-time code, before access to an account, device, or service is granted.

3

15.     Many financial and cryptocurrency accounts require MFA prior to allowing access to an account, making account changes, or initiating transactions. Common MFA mechanisms include text message authorization codes and authentication applications, such as Google Authenticate and DUO Mobile. Notably, both text message and application-based MFA codes can be accessed with an unlocked device.

16.     Within hours of the theft, many of VICTIM-1's traditional financial and cryptocurrency-related accounts had been accessed by individuals other than VICTIM-1.

17.     EXCHANGE-1 is a cryptocurrency exchange (sometimes known as a virtual asset service provider) that, among other things, provides customers with the ability to purchase, sell, and trade various cryptocurrencies. At all relevant times, VICTIM-1 was an EXCHANGE-1 customer. Among EXCHANGE-1's offerings is one called "EXCHANGE-1 Vault." A customer can choose to store cryptocurrency in their EXCHANGE-1 Vault.  They can then apply certain enhanced security features to their EXCHANGE-1 Vault, to include a secure withdrawal process, co-signers, and/or time-delayed withdrawals.

18.     Based on information provided by VICTIM-1 and a screenshot of VICTIM-1's e-mail inbox, I know that from approximately 4:20 a.m. through approximately 7:37 a.m. on June 28, 2026, an individual other than VICTIM-1 began to request withdrawals of Bitcoin (BTC) and Ether (ETH) from VICTIM-1's EXCHANGE-1 Vault.  These requests totaled 10.9096019 ETH and 1.40010936 BTC, together worth approximately $167,065.10.  At approximately 4:54 a.m., VICTIM-1's EXCHANGE-1 account was used to purchase $2,829.23 worth of USDT, a dollar-equivalent stablecoin.  At approximately 7:38 a.m., an individual other than VICTIM-1, but using VICTIM-1's e-mail address, approved the ETH withdrawal.

19.     During this investigation, investigators obtained records and information from EXCHANGE-1.  From those records and information, I know that at least four IP addresses and

---

[1] Because VICTIM-1's EXCHANGE-1 Vault was engaged with a security feature that requires a 48-hour delay before a cryptocurrency withdrawal from a customer's EXCHANGE-1 account is executed, even after that withdrawal is approved, VICTIM-1 was able to contact EXCHANGE-1 and cause the transfer to be canceled.

at least six device IDs[2] were used to access VICTIM-1's account following the theft of his telephone.  From open-source information, I know that at least some of the IP addresses used were from virtual private network (VPN) services.  Based on my training and experience, I know this pattern of IP address use, in which an account is accessed within a short period of time from several IP addresses registered to more than one entity in different geographic locations, as well as the use of VPNs, is indicative of methods commonly used by criminal actors to conceal their true location and identity.

20.     EXCHANGE-1 has determined that one of the IP addresses used to access VICTIM-1's account without authorization was associated with a specific device ID, which acts as a digital fingerprint. EXCHANGE-1's own internal investigation has revealed that the same device ID has been used in the account takeovers of at least 10 different EXCHANGE-1 accounts since November 6, 2025. [3]

21.     I know from my training and experience that individuals who engage in organized account takeover schemes often work with others to conduct this criminal activity. Each member of the scheme is assigned a different role in the account takeover workflow, working simultaneously to bypass security features, obtain and withdraw stolen funds, and subsequently withdraw those funds.

22.     Investigators also learned from EXCHANGE-1 that during the period that someone other than VICTIM-1 had access to his EXCHANGE-1 account, the account email was changed to the e-mail address E-MAIL-1.

23.     A timeline of the activity following the theft of VICTIM-1's iPhone, which is based on VICTIM-1's statements and my review of a screenshot of his e-mail inbox, is below:

---

[2] A "device ID" does not necessarily denote a specific physical device; it may consist of software-generated information that uses, for example, a combination of browser history, screen resolution, and fonts to uniquely identify the same device.
[3] In this case, EXCHANGE-1 determined that the common Device ID was not the same physical device, but a persistent browser fingerprint.

5

| Date – Time | Activity |
|---|---|
| June 28, 2026 – Approx 2:15am PT | VICTIM-1's mobile device is stolen |
| June 28, 2026 – 4:20am PT | Attempt to withdraw 0.1 BTC from VICTIM-1's EXCHANGE-1 Vault |
| June 28, 2026 – 4:52am PT | Attempt to withdraw 0.1 ETH from VICTIM-1's EXCHANGE-1 Vault |
| June 28, 2026 – 4:54am PT | Purchase of 2,753.170002 USDT using VICTIM-1's EXCHANGE-1 account |
| June 28, 2026 – 7:23am PT | New address added to VICTIM-1's EXCHANGE-1 account Address Book |
| June 28, 2026 – 7:28am PT | Attempt to withdraw 1.40010936 BTC from VICTIM-1's EXCHANGE-1 Vault |
| June 28, 2026 – 7:37am PT | Attempt to withdraw 10.9096019 ETH from VICTIM-1's EXCHANGE-1 Vault |
| June 28, 2026 – 7:38am PT | 10.9096019 ETH withdrawal attempt approved |
| June 28, 2026 – 7:42am PT | Account email changed to E-MAIL 1 |

24.     Additionally, according to VICTIM-1, on June 28, 2026 at approximately 4:08 am PT, someone other than VICTIM-1 added a new payee that VICTIM-1 did not recognize to VICTIM-1's Bank of America account and initiated a transfer of $4,000 from VICTIM-1's account to the new payee.

25.     Moreover, VICTIM-1 also reported that after his iPhone was stolen, several unauthorized purchases were made using his COMPANY-2 account from June 28, 2026 through

6

June 30, 2026.  COMPANY-2 is a financial payments company.  These purchases notably began on the same date as the iPhone theft, attempted EXCHANGE-1 withdrawals, and unauthorized transfer from VICTIM-1's Bank of America account. The unauthorized purchases included the following:

| Date | Vendor | Purchase Amount |
|---|---|---|
| June 30, 2026 | [transportation network company] | $28.94 |
| June 29, 2026 | [food and consumer goods delivery company] | $106.09 |
| June 29, 2026 | [transportation network company] | $30.70 |
| June 29, 2026 | Target (via [food and consumer goods delivery company]) | $146.96 |
| June 28, 2026 | [department store] Gift Cards | $500.00 |
| June 28, 2026 | [sports store] | $172.00 |
| June 28, 2026 | [electronics store] | $502.76 |
| June 28, 2026 | Target T-1428 | $11.05 |
| June 28, 2026 | [department store] Gift Cards | $750.00 |
| June 28, 2026 | Pay in 4 | $416.29 |
| June 28, 2026 | Target T-1428 | $668.49 |

26.     I know from my training and experience that individuals committing fraud often launder the proceeds of that fraud through the use of gift cards.

7

Identification of CHARLES

27.     As described above, just before the theft of his iPhone, VICTIM-1 was approached by two individuals, one of whom provided his Instagram account handle as ACCOUNT-1. According to VICTIM-1, the person depicted on the profile picture for ACCOUNT-1 was one of the individuals he met outside the club just before the theft of his phone.  VICTIM-1 described this person as having a distinct London accent.

28.     The U. S. Secret Service subsequently identified this individual as Bilal Ben Abdallah Islam CHARLES.  I know from United States government databases that CHARLES entered the United States from Toronto, Canada via the San Francisco International Airport on June 20, 2026.  I also know that a story from ACCOUNT-1 that was posted on June 20, 2026 depicts the user traveling in an airplane with the location tag "California, U.S.A."

29.     According to records from Meta Platforms, Inc. (Meta), E-MAIL-1 is one of the registered e-mail addresses for ACCOUNT-1, and E-MAIL-1 has been verified, meaning that Meta has sent E-MAIL-1 an e-mail and has received a response.  From records provided by the service provider for E-MAIL 1, I know that the identity associated with E-MAIL 1 is Bilal Charles of London, United Kingdom. I know from airline records provided by a major U.S. airline that CHARLES provided that airline a London address as his home address and E-MAIL 1 as his e-mail address.

30.     Based on records from Target Corporation, I know that Target Corporation identified a $668.49 transaction and an $11.05 transaction conducted at Target Store 1428 in San Leandro, California on June 28, 2026.  These purchases match the unauthorized Target transactions reported by VICTIM-1, as described above.  The $668.49 transaction was for an Apple iPad at 8:48 a.m. and the $11.05 purchase was for a Starbucks transaction at 9:18 a.m. at the same Target store.  From my review of the surveillance video, I know that the person I

believe to be CHARLES passed the bag containing the iPad Air to another individual in the Target store.[4]

31.   With respect to both purchases, surveillance video depicts a person who appears to be CHARLES paying for the purchase using a smartphone and subsequently walking out of the store holding a smartphone with a blue case. VICTIM-1 described his stolen phone as having a blue case.  Additionally, the Target Corporation surveillance footage depicts CHARLES as wearing a gray Nike track suit:



On June 30, 2026, ACCOUNT-1 posted a story where CHARLES is depicted as wearing the same jacket seen in the Target Corporation surveillance video.

\\

\\

\\

\\

---

[4] Initial reports from Target Corporation security personnel suggested that CHARLES handed off the iPad outside of the store; from law enforcement's subsequent communications with those personnel and my own review of the video surveillance, I now know that the transfer occurred inside the store.

## CONCLUSION

32.    There is probable cause to believe that **Bilal Ben Abdallah Islam CHARLES** has violated Title 18, United States Code, Section 1029(a)(5).   Therefore, I respectfully request the Court issue a criminal complaint and arrest warrant.

*/s/ Jesse Bumanlag*

_____
JESSE BUMANLAG
Special Agent
Internal Revenue Service

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this 10th  day of July, 2026.  This complaint and warrant are to be filed under seal.

_____
HONORABLE PETER H. KANG
United States Magistrate Judge

10